## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HENRY ROBINSON,

      Plaintiff,

v.

SERGEANT STEPHEN KUE and
POLICE OFFICER BRAIR CREECH,

      Defendants.

_____/

Case No. 2:23-cv-12355
Hon. Brandy R. McMillion
United States District Judge

## <u>OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 34)</u>

Before the Court is Defendants Sergeant Stephen Kue ("Kue") and Officer Briar[1] Creech's ("Creech") (collectively, "Defendants") motion for summary judgment on the issue of qualified immunity. *See generally* ECF No. 34. Defendants argue they are entitled to qualified immunity as a matter of law against Plaintiff Henry Robinson's ("Robinson") claims that they violated his Fourth Amendment rights to be free from unreasonable search and seizure. *See id.*; *see also* ECF No. 1. Having reviewed the parties' briefs, the Court finds oral argument unnecessary. *See* E.D. Mich. LR 7.1(f). For the reasons set forth below, the Court **GRANTS**

---

[1] The Court notes that Officer Creech's name is spelled differently in the case caption, the Motion for Summary Judgment, and his deposition. *See* ECF Nos. 34, 36-2. Because the Court trusts Creech's pronunciation of his own name, the Court elects to spell Creech's name, here, in line with how he pronounced it at his deposition. ECF No. 36-2, PageID.163.

Defendants' Motion for Summary Judgment (ECF No. 34).  Plaintiff's Complaint

(ECF No. 1) is therefore **DISMISSED WITH PREJUDICE**.

## I.

On September 18, 2020, Sergeant Kue and Officer Creech were driving in

their scout car when they saw Robinson drive through an intersection without

stopping at the stop sign.  ECF No. 36-2, PageID.173, ECF No. 36-3, PageID.221.

Kue, who was driving, pulled up behind Robinson's vehicle and initiated a traffic

stop.  ECF No. 36-2, PageID.174.  Upon seeing the scout car's overhead lights,

Robinson "abruptly stopped" and began "abruptly reaching behind his seat" in what

appeared to be an effort to "conceal something."  *Id.* (Creech Deposition) ("To me,

it felt like he . . . kind of just slammed on the brakes."); *see also* ECF No. 36-3,

PageID.240 (Kue Deposition) ("[Robinson] showed like furtive gestures by moving

around excessively . . . [it] appeared he was trying to hide something.").

Both Defendants exited the patrol car and approached Robinson, who

continued reaching behind his seat as the officers approached.  ECF No. 36-2,

PageID.176; ECF No. 36-3, PageID.224 (Kue Deposition) ("[A]s I was walking up

to the car, he was showing multiple signs of trying to stuff something or hide

something.  I recall myself telling him to stop moving . . . .").  Kue—who had

approached Robinson from the driver's side while Creech approached the

passenger's side—asked Robinson for his driver's license, but Robinson could not

produce one.  ECF No. 36-3, PageID.224.  Prompted by Robinson's evasiveness during this interaction and the furtive gestures he had observed, Kue asked Robinson to step out of the vehicle.  *Id.* at PageID.223.  Robinson complied and Kue escorted him to the front of the scout car so Creech could conduct a search of the vehicle.  *Id.* at PageID.225.  Robinson appeared nervous and "kept looking back towards his car" as Kue escorted him away.  *Id.* at PageID.224-225.  Once at the scout car, Kue placed his hand on the small of Robinson's back.  *Id.* at PageID.225.

Creech then began conducting "a wingspan search" of the area Robinson had been observed reaching toward.  ECF No. 36-2, PageID.179, 198.  It is undisputed that as Creech conducted his search, Robinson attempted to run away from Kue, though it is unclear from the record what prompted Robinson to flee.[2]  ECF No. 36-3, PageID.225.  Kue grabbed Robinson, told him to stop, and yelled out to Creech for assistance.  *Id.* ("[O]r something to that regards.").  Because Kue had a "firm grip" on Robinson's shirt and waistband, the two remained "in a standstill [for a] moment" despite Robinson's efforts to pull away.  *Id.*  But the moment was brief; either because Robinson "ripped himself" free or "fell trying to escape," Kue lost hold of Robinson's shirt and Robinson fell to the ground.  *Id.* at PageID.226-229.

---

[2] Defendants hypothesize that Robinson attempted to flee because he saw Creech was "close" to discovering a concealed firearm.  *See* ECF No. 36-2, PageID.180.

Robinson was wearing sandals and sustained a small toe injury from the fall.  *Id.* at

PageID.229.

Hearing the commotion, Creech looked up from his search and through

Robinson's back window to see "what was going on."  ECF No. 36-2, PageID.180,

187.  He then jumped out of the car and drew his department-issued taser, warning

Robinson that he would tase him if he continued to resist.  *Id.*  According to Creech,

once Robinson saw the taser he began to comply.  *Id.*  Still, Kue handcuffed

Robinson "to prevent any more attempts at fleeing [or] any more force."  *Id.*

Robinson was still on the ground from his fall when he was handcuffed.  ECF No.

36-3, PageID.229.  Kue got on top of Robinson to handcuff him, and Creech—to

"stabilize" Robinson and "prevent him from twisting and turning"—placed his hand

on "the top of [Robinson's] back . . . near his neck region just to anchor him to the

ground" while he was being handcuffed.  ECF No. 36-2, PageID.181; *see also id.*

(Creech Deposition) ("[I]t wasn't like a forceful like stay . . . . It's just you know,

kind of stop moving.").  After Robinson was handcuffed, Creech continued his

wingspan search and discovered a concealed firearm.  *Id.* at PageID.192-193, 198.

After checking that Robinson did not have a concealed pistols license ("CPL"),

Defendants arrested him.  ECF No. 36-3, PageID.231, 240.

On September 17, 2023, Robinson brought this civil suit against Defendants

for arrest without probable cause and unconstitutional use of excessive force in

violation of the Fourth Amendment.  *See generally* ECF No. 1.  Defendants raised qualified immunity as an affirmative defense in their Answer, and the Court ordered the parties to conduct limited discovery on the issue at a scheduling conference held on December 18, 2024.  *See* Text-Only Order, dated December 18, 2024.  On February 28, 2025, Defendants filed the Motion for Summary Judgment now before the Court.  *See* ECF No. 34.  Robinson responded and the time for Defendants' reply has passed.  *See* ECF No. 36; *see also* E.D. Mich. LR 7.1(e).  Satisfied with the parties' briefing, the Court will rule without a hearing.  E.D. Mich. LR 7.1(f).  For the reasons that follow, the Court finds Defendants are entitled to qualified immunity.

## II.

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is

no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the movant satisfies its initial burden of demonstrating the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. *Scott*, 550 U.S. at 380; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Scott*, 550 U.S. at 380 (quoting *Matsushita*, 475 U.S. at 586), as the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott*, 550 U.S. at 380 (quoting *Anderson*, 477 U.S. at 247-248); *see also Babcock & Wilcox Co. v. Cormetech, Inc.*, 848 F.3d 754, 758 (6th Cir. 2017) ("A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment."); *Midtown Inv. Grp. v. Massachusetts Bay Ins. Co.*, No. CV 20-10239, 2021 WL 3164274, at *2 (E.D. Mich. July 27, 2021).

Despite viewing the evidence in a light favorable to plaintiff, the Court notes that in the context of qualified immunity, it remains the plaintiff's burden to show that the defendant is not entitled to the defense. *See Williams v. Maurer*, 9 F.4th 416, 430-31 (6th Cir. 2021). "That is, although on summary judgment this Court views the factual evidence and draws all reasonable inferences in favor of the non-moving

party, when a defendant raises the defense of qualified immunity in a motion for summary judgment, the plaintiff must show that those facts and inferences would allow a reasonable juror to conclude that the defendant violated a clearly established constitutional right." *Id.*

### III.

"Qualified immunity shields officers from civil liability when their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *King v. City of Rockford, Michigan*, 97 F.4th 379, 390 (6th Cir. 2024) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)). To defeat an officer's claim of qualified immunity, a plaintiff must show that the defendant violated a constitutional right and that the "existing caselaw 'clearly established' this violation at the time" of the defendant's alleged violation. *Clark v. Louisville-Jefferson Cnty. Metro Gov't*, 130 F.4th 571, 578 (6th Cir. 2025); *id.* at 584 ("To qualify as clearly established, a legal rule must have a sufficiently clear foundation in then-existing precedent."). A clearly established violation occurs where "'every reasonable' officer would agree that the rule applied to the situation that a defendant confronted and prohibited the defendant's actions." *Id.* at 581 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018)). "Qualified immunity therefore protects 'all but the plainly incompetent or those who knowingly

violate the law.'"  *King*, 97 F.4th at 390 (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).

In the context of summary judgment, the Court should therefore grant summary judgment "unless the evidence viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established."  *King*, 97 F.4th at 390 (internal quotations omitted).

Robinson does not challenge the constitutionality of the initial traffic stop. *See generally* ECF No. 1.  Even if he had, the Court finds the stop was constitutional. The Fourth Amendment tolerates traffic stops conducted by police officers "when [they] possess[] probable cause of a civil infraction or [have] reasonable suspicion of criminal activity."  *King*, 97 F.4th at 390-91.  Defendants saw Robinson run a stop sign, which is a violation of Michigan law.  MICH. COMP. LAWS § 257.649; *see also* ECF No. 36-2, PageID.173; ECF No. 36-3, PageID.221.  Thus, a reasonable jury must find that Defendants had probable cause to effectuate the traffic stop.

Robinson's Complaint instead alleges that Defendants violated his clearly established constitutional rights when they (1) searched his vehicle without a warrant; (2) subjected him to excessive force; and (3) arrested him without probable cause. *See generally* ECF Nos. 1, 36.  The Court disagrees.  The Court will explain,

in turn, why Defendants are entitled to qualified immunity as a matter of law on all three of Robinson's challenges.

### A. Search of Robinson's Vehicle

The Fourth Amendment protects against "unreasonable searches and seizures."  U.S. CONST. amend. IV; *see also United States v. McMullen*, 103 F.4th 1225, 1229 (6th Cir. 2024).   Searches conducted without a warrant are "*per se* unreasonable under the Fourth Amendment." *United States v. Lambert*, 770 F. App'x 737, 738 (6th Cir. 2019); *see also McMullen*, 103 F.4th at 1229 ("[G]overnment officers must secure a warrant through the judicial process before conducting a search or seizure.").   However, that "general rule" is subject to a number of well-established exceptions.  *Lambert*, 770 F. App'x at 738.

Robinson argues that the search of his vehicle violated the Fourth Amendment because Creech lacked "consent, a warrant, or probable cause, and without observing any weapon in plain view."  ECF No. 36, PageID.154.  The Court need not determine if any of the warrant exceptions mentioned by Robinson apply, because the undisputed evidence demonstrates that Defendants' conduct fits squarely within the well-established exceptions set out in *Terry v. Ohio*, 392 U.S. 1 (1968), and *Michigan v. Long*, 463 U.S. 1032 (1983).

The Supreme Court's decision in *Terry* "authorizes police officers to conduct temporary investigative stops without a warrant or probable cause."  *McMullen*, 103

F.4th at 1229; *see generally Terry v. Ohio*, 392 U.S. 1 (1968).  It further held that officers do not offend the Fourth Amendment when they "perform protective searches for weapons" during these *Terry* stops, so long as "they reasonably suspect that the stopped individual is 'armed and dangerous.'"  *McMullen*, 103 F.4th at 1229 (quoting *Terry*, 392 U.S. at 26-27)).  Recognizing that "roadside encounters between police and suspects are especially hazardous," the scope of a valid *Terry* search was expanded in *Long* to include limited protective searches of the passenger compartment of an automobile, but only if the officer has the requisite reasonable suspicion that "the suspect is dangerous and the suspect may gain immediate control of weapons."  *Long*, 463 U.S. at 1049; *see also McMullen,* 103 F.4th at 1231.

Courts consider the "totality of the circumstances" when determining whether the officer had a valid basis for initiating the protective search, giving "due weight to reasonable inferences that officers may draw from a given situation in light of their training and experience."  *McMullen*, 103 F.4th at 1230; *United States v. Tillman*, 543 F. App'x 557, 562 (6th Cir. 2013) ("Officers may draw on their own experience and specialized training to make inferences . . . that might well elude an untrained person.").  For example, courts have found "that an officer's observation of a defendant reaching under the seat in addition to other factors can create reasonable suspicion to justify a *Terry* frisk," because officers have found that this type of "'furtive movement' is consistent with an attempt to conceal a weapon."

*Tillman*, 543 F. App'x at 561; *McMullen*, 103 F.4th at 1231 (recognizing that "some behaviors—like trying to conceal an object from view—are particularly suspicious when prompted by a police officer's unexpected appearance").  The same is true of "nervous" or "evasive behavior." *Tillman*, 543 F. App'x at 562.  Although "a certain level of nervousness may be expected during encounters with the police" and is thus, "insufficient, by itself, to find reasonable suspicion," even "innocent conduct, when examined in its totality, can support a finding of reasonable suspicion." *Id.*; *see also Haliburton v. City of Ferndale,* 653 F. Supp. 3d 377, 392 (E.D. Mich. 2023) ("A person's suspicious conduct, furtive movements, nervousness, and evasiveness placed in context of an officer's experience and under the totality of circumstances can provide reasonable suspicion warranting a *Terry* frisk.").

Here, the Court finds the totality of the circumstances justify Defendant's limited protective search of Robinson's vehicle.  The undisputed record indicates that Robinson "abruptly stopped" once he noticed the officers' presence and then immediately began "trying to hide something" behind his seat.  ECF No. 36-2, PageID.174, 176; ECF No. 36-3, PageID.240.  Robinson was also nervous and "showing signs of evasiveness" during his initial interaction with Kue.  ECF No. 36-3, PageID.223.  These observations, coupled with Defendants' combined 15 years of experience in law enforcement, led them to suspect Robinson was armed and dangerous and to determine that a protective search was warranted.  *See* ECF No.

36-2, PageID.194; ECF No. 36-3, PageID.215.   Moreover, Robinson's attempt to flee from Kue as Creech was "close to finding" the concealed firearm further raised Defendants' suspicions that Robinson was armed and dangerous and led Creech to continue the search that eventually uncovered the firearm.   *See* ECF No. 36-2, PageID.180.   Taken together[3] and giving due weight to Defendants' specialized training and experience, the Court finds no reasonable jury could find that Defendants lacked the reasonable suspicion justifying the search.

The fact that Robinson was being held near the patrol car during the initial search does not change the result.   A protective search may still be valid "even if the suspect is effectively under [an] officer's control, as the suspect may 'break away from police control and retrieve a weapon from his automobile.'"[4] *Lambert*, 770 F.

---

[3] Robinson cites *United States v. Townsend* to argue that "the Sixth Circuit has held that [furtive] movements, without more, do not justify a warrantless search."  ECF No. 36, PageID.154 (citing *United States v. Townsend*, 305 F.3d 537 (6th Cir. 2002)).  This argument fails for two reasons.  First, *Townsend* is inapposite because it deals with the question of whether the officers had sufficient "reasonable suspicion that the individual [had] engaged in more extensive criminal conduct" to justify a continued investigatory detention, which is not the same as the question before the Court of whether the protective search incident to a valid *Terry* stop was valid.  *Cf. Townsend*, 305 F.3d at 541 ("The sole question in this case is whether the officers had the reasonable suspicion necessary for the continued investigatory detention of the defendants.").  Second, this argument ignores that Defendants did not rely solely on the observed furtive movements; their reasonable suspicion was also based upon Robinson's abrupt stop in response to the patrol car's lights as well as his nervous and evasive demeanor when interacting with Kue.  Almost no factor, standing alone, is sufficient to support reasonable suspicion.  However, the record does not indicate that Defendants relied solely on one factor in this instance.

[4] For justification of this holding, one need look no further than the facts of this case: Robinson *did* break away from Kue, even though he was effectively under Kue's control.  Although Robinson's attempt to flee was ultimately unsuccessful, the fact that he *could* break free surely

App'x at 740 (citing *Long*, 463 U.S. at 1051); *see also McMullen,* 103 F.4th at 1232 ("*Long* clarified that protective vehicle searches can be appropriate even when the suspect is outside of his vehicle and under police control.").  Nor does the fact that Robinson was handcuffed and temporarily detained when the search resumed change the result.  As the Sixth Circuit highlighted in *Lambert*, even if the person is temporarily detained during the stop, if they are "'not placed under arrest, [they] will be permitted to reenter [their] automobile, and [they] will then have access to any weapons inside.'"  *Id.* (quoting *Long*, 463 U.S. at 1052).  Here, Robinson was not arrested until Creech uncovered the weapon in the resumed search.  *See* ECF No. 36-3, PageID.235.  Consequently, up until arrest, it was always possible that Robinson would be permitted to reenter his vehicle and access any weapons therein. *McMullen*, 103 F.4th at 1232 (finding that "a weapon isn't necessarily inaccessible just because it is temporarily" out of reach).

Because the uncontested record demonstrates reasonable suspicion that Robinson was dangerous and would have immediate access to weapons if permitted to return to his car, a reasonable jury would need to find Defendants did not violate Robinson's Fourth Amendment rights in conducting a protective search.

---

supports the principle that being "effectively under" an officer's control does not defeat the possibility that a suspect "may gain immediate control of weapons" in their car. *Lambert*, 770 F. App'x at 740; *Long*, 463 U.S. at 1049.

Even if reasonable juries could disagree on whether the record indicates that Defendants had the requisite reasonable suspicion to search Robinson's car, the Court finds Robinson has not met his burden of showing that Defendants' search violated clearly established law. *Williams*, 9 F.4th at 437 ("Plaintiffs bear the burden of showing that Defendants' unconstitutional conduct violated clearly established law."). Neither the precedent identified by Robinson,[5] nor the caselaw identified by the Court, "clearly prohibit[s]" the officers' search "in the particular circumstances" they were faced with. *Id.* ("The Supreme Court has repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.") (internal quotations and citations omitted); *see also* ECF No. 36, PageID.154. As such, Defendants are entitled to qualified immunity as to this claim.

---

[5] In addition to *Townsend*, which the Court has already explained is inapposite, *see supra* n. 2, Robinson cites *Arizona v. Gant*, 556 U.S. 332 (2009), and *United States v. Lyons*, 687 F.3d 754 (6th Cir. 2012), in support of his position that the search was unconstitutional. *See* ECF No. 36, PageID.154. First, the Sixth Circuit made clear that *Gant* does not apply to cases where the detained individual has not yet been arrested. *See Lambert*, 770 F. App'x at 741. Second, *Lyons* deals with the automobile exception to the Fourth Amendment's warrant requirement, not—as is relevant here—the exception for protective searches conducted in connection with a valid *Terry* stop. *See Lyons*, 687 F.3d at 769-70 (deciding that the automobile exception applied to the officer's search of the individual's vehicle for controlled substances where they had probable cause to believe the vehicle contained contraband or evidence of criminal activity). As a result, none of the cases cited by Robinson demonstrate Defendants' search violated clearly established law.

**B. Excessive Force**

"The Fourth Amendment's guarantee against unreasonable seizures encompasses a protection against use of excessive, or unreasonable, force 'in the context of an arrest or investigatory stop.'" *King*, 97 F.4th at 393 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). Determining whether the use of force was reasonable "entails consideration of the totality of the circumstances, including, but not limited to: (1) 'the severity of the crime at issue;' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others;' and (3) whether the suspect 'is actively resisting arrest or attempting to evade arrest by flight.'" *King*, 97 F.4th at 393 (quoting *Graham*, 490 U.S. at 396).

Robinson challenges Defendants' use of force to detain and handcuff him after he attempted to flee, seemingly arguing because the flight was not "successful" there was no justification for physical restraint. *See* ECF No. 36, PageID.154-155 (arguing that "[u]se of force against a non-resisting or minimally resisting suspect violates the Fourth Amendment"). The Court disagrees.

Although the traffic violation Robinson was stopped for is "within the lowest rung of unlawful activity" and thus, generally does not justify use of increased force, *see King*, 97 F.4th at 394, the second and third factors weigh in favor of the reasonableness of the force used by Defendants in this case. The Sixth Circuit has held that some force is justified where there was "reasonable need to prevent [the

15

suspect] from fleeing and to discern whether he was armed." *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 772 (6th Cir. 2004).  And considering the record is clear that Robinson did, in fact, try to flee while Creech was conducting the protective sweep, a reasonable jury would have to find that Kue grabbing his clothing to prevent flight, and handcuffing him to prevent future attempts to flee, was reasonable.  *See id.* (holding an officer was justified in grabbing a suspect to keep him from fleeing from a pat-down search); *see also Brown v. Lewis*, 779 F.3d 401, 415 (6th Cir. 2015) ("[A]n attempt to flee could justify the use of handcuffs or another form of detention to prevent additional flight during the investigatory stop.").  So too was Creech's minor use of force to stabilize Robinson while he was being handcuffed.  *Cf. King*, 97 F.4th at 398 (finding an officer's application of a knee to a suspect's back after takedown could be objectively unreasonable use of force where the suspect no longer resists arrest and poses no flight risk); ECF No. 36-2, PageID.181 ("Robinson was on the ground . . . and to prevent him from twisting and turning just so we could get him cuffed . . . I did put my hand on the top of his back like near his neck region just to anchor him to the ground.").  While it is unfortunate that Robinson was injured from the encounter, it cannot be said that the injury was attributable to an unconstitutional use of force.  ECF No. 36-3, PageID.226, 229 (Kue Deposition) (testifying that Robinson "sustained a small cut

to his toe" because he "tripped or fell trying to escape [Kue] while [Kue] was holding on to his shirt").

Further, regardless of whether Defendants' use of force was reasonable in this scenario, there is no clearly established precedent that prevents officers from grabbing and handcuffing a suspect who attempts to flee.  In fact, precedent seems to suggest more force may be constitutionally permissible in comparable scenarios. *See, e.g.*, *King*, 97 F.4th at 397 ("Defendants are . . . entitled to qualified immunity because there is no clearly established principle that prevents officers from taking individuals to the ground during an investigatory detention . . . whose actions suggest they were trying to flee.") (internal alterations and quotations omitted); *Kapuscinski v. City of Gibraltar,* 821 F. App'x 604, 612 (6th Cir. 2020) ("We have held that if a suspect actively resists arrest and refuses to be handcuffed, officers do not violate the Fourth Amendment by using a taser to subdue him.") (internal alterations and quotations omitted).  While Robinson is correct that it is "clearly established in this circuit that a person has a constitutional right to be free from injury-threatening physical force when [they are] not actively resisting the police," *Moser v. Etowah Police Dep't*, 27 F.4th 1148, 1153 (6th Cir. 2022), he fails to point to any precedent clearly establishing that there is a right to be free from the force exerted here when

17

he was actively trying to flee Defendants.[6]   Therefore, Defendants are entitled to qualified immunity as to the excessive force claim because the Court cannot say "every reasonable official would have understood" that this use of force was unconstitutional.  *King*, 97 F.4th at 397.

### C. Probable Cause to Arrest

At the time Defendants arrested Robinson, it was "clearly established that arrest without probable cause violates the Fourth Amendment."  *Ouza v. City of Dearborn Heights, Michigan*, 969 F.3d 265, 279 (6th Cir. 2020).  Robinson argues Defendants lacked probable cause when they arrested him, because "[a]t the time he was detained and handcuffed, the weapon had not been found, and Defendants relied only on an alleged traffic infraction and a suspended license."  ECF No. 36, PageID.155.

First, the record is uncontested that Robinson was not arrested until the firearm was uncovered, and that he was arrested because he did not have a CPL.  *See*

---

[6] Robinson cites to *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167 (6th Cir. 2004), for his position that Defendants' use of force was unconstitutional.  But the officer's conduct in *Solomon* is easily distinguishable.  There, the officer knocked the plaintiff to the ground "by kicking her legs even though she was not a flight risk and, in fact, was following [the officer's] order[s]" and then, "shoved her into a display case" despite the fact her "right arm [was] handcuffed and even though [she] was not actively resisting arrest."  *Id.* at 173.  Although a case need not be "directly on point" to make a principle "clearly established," the case must address circumstances sufficiently similar to conclude that the constitutional question before the Court in this scenario has been placed "beyond debate."  *See Zakora v. Chrisman*, 44 F.4th 452, 465 (6th Cir. 2022).  *Solomon* does not do the work Robinson needs it to.  Thus, the Court finds Robinson has not met his burden in demonstrating Defendants' actions violated clearly established law.

ECF No. 36-3, PageID.232.  Having confirmed that Robinson did not have legal authority to carry a firearm, Defendants had probable cause to arrest him.  *See id.* ("Q: Did you check whether Mr. Robinson had a license or legal authority to carry a firearm? A: Yes.  He did not have a conceal[ed] pistols license and was not allowed to carry a firearm."); *see also United States v. Turk*, 744 F. Supp. 3d 794, 804 (E.D. Mich. 2024) ("Carrying a concealed weapon in Michigan is presumptively illegal and once officers detected the firearms and [the suspect] could not produce a gun license, officers had probable cause to arrest him.").

Second, even if the record could be construed to find Robinson was arrested before the weapon was uncovered, Defendants had probable cause to arrest him as soon as he admitted he was driving without a valid license.  *See* ECF No. 36-2, PageID.199; ECF No. 36-3, PageID.240; *United States v. Fleming*, 201 F. Supp. 2d 760, 768 (E.D. Mich. 2002) ("[The driver] admitted to the officers that he did not have a driver's license.  Therefore, at that point in time, [the officers] had probable cause to arrest [him] for operating a vehicle without a driver's license in violation of the Michigan Vehicle Code, M.C.L. § 257.904a."); *Avery v. Hoague*, 7 F. App'x 320, 321 (6th Cir. 2001) (finding the officers had probable cause to arrest when the driver admitted to driving the car and a computer search indicated his license was suspended); *see also* MICH. COMP. LAWS §§ 257.904, 257.904a.

In either scenario, Defendants had probable cause to arrest Robinson. Therefore, they did not violate his Fourth Amendment rights and are entitled to qualified immunity as to this claim.

**IV.**

Accordingly, Defendants' Motion for Summary Judgment (ECF No. 34) is **GRANTED**, and Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: June 2, 2025
Detroit, Michigan

s/Brandy R. McMillion
BRANDY R. MCMILLION
United States District Judge